In re WILLARD PARKER HOSPITAL.

CITY OF NEW YORK v. CONSOLIDATED GAS CO. OF NEW YORK.

(No. 6822.)

(Supreme Court, Appellate Division, First Department.    February 5, 1915.)

ADVERSE POSSESSION (§ 114*)—EVIDENCE.

   In proceedings to acquire land for public use, evidence *held* to require a finding that claimant company had acquired title to the land by adverse possession.

   [Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683, 685, 686;  Dec. Dig. § 114.*]

Appeal from Special Term, New York County.

Proceedings by the City of New York for the acquisition of lands, alleged to belong to the Consolidated Gas Company of New York, for the benefit of the Willard Parker Hospital. From an order denying a motion to confirm the report of a referee, the City of New York appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Charles D. Olendorf, of New York City, for appellant.

Truman H. Baldwin, of New York City, for respondent.

DOWLING, J.  The question involved in this appeal is the ownership of certain property lying between Fifteenth and Sixteenth streets

on the westerly side of Avenue D, and between Avenue D and the East River, in the city of New York, now occupied by the Consolidated Gas Company of New York, title to which, as well as wharfage rights along the easterly side of East street opposite said lands, are claimed both by said company and by the city of New York.

The lands in question were originally lands under water lying within the boundaries of a small bay of the East River (apparently unnamed) extending from the line of about the present Thirteenth street to about Twenty-Fifth street. The upland at the head of the bay formed part of the estate of Petrus Stuyvesant, and descended to his great-grandson Petrus Stuyvesant, who died in 1805. He owned two farms, called "the Bowery" and "Petersfield," adjoining each other; the dividing line between them being Stuyvesant street, originally extending to high-water line and running transversely to the foot of the present Eighteenth street. Title to the lands below high-water line around the island of Manhattan originally was in the English crown, and the lands under water between high and low water line were granted by it to the mayor, aldermen and commonalty of the city of New York, under the Dongan and Montgomerie charters. The state of New York having succeeded to the title and rights of the crown, the state (chapter 80, Laws of 1798) gave the right to the city to lay out streets or wharves along the river front and to extend the same, and provided that the streets or wharves should be made and completed according to the plan—

"by and at the expense of the proprietors of land adjoining, or nearest and opposite to the said streets or wharves in proportion to the breadth of their several lots by certain days to be for that purpose appointed by the said mayor, aldermen, and commonalty, and that the respective proprietors of such of the said lots which may not be adjoining to the said streets or wharves shall also fill up and level at their own expense according to such plan, and by the said days respectively, the spaces lying between their said several lots and the said streets and wharves, and shall upon so filling up and leveling the same be respectively entitled to and become the owners of the said intermediate spaces of ground in fee simple."

By chapter 115, Laws of 1807, the commissioners of the land office were authorized and directed to issue letters patent to the mayor, aldermen, and commonalty of the city of New York, granting all the right and title of the state of New York to the land under water along the westerly shore of the East River for the distance of 400 feet into the river from low-water mark, extending from the north side of Corlear's Hook for a distance of two miles to the north:

"Provided always that the proprietor or proprietors of the lands adjacent shall have the pre-emptive right in all grants made by the corporation of the said city of any lands under water granted to said corporation by this act."

Letters patent in accordance with this act were issued December 26, 1807. By chapter 166, Laws of 1826, it was, among other things, enacted that Tompkins street, as laid out and approved by the city, should be the permanent exterior street on the East River, between Rivington street and Twenty-Third street, and that all grants made or to be made by the city should be construed as rightfully made to

extend thereto.  Tompkins street was never filled in, either as a street or wharf, and never had any actual physical existence.

Hezekiah Bradford, by various mesne conveyances, had become the owner of the upland and land under water forming a triangle bounded by the center line of Fourteenth street to the center line of Stuyvesant street and the easterly line of Tompkins street as proposed, exclusive of the land embraced in the streets and avenues therein contained.  On June 22, 1848, the city made a grant to him of all lands under water lying east of high-water line from Fourteenth to Stuyvesant street and out to the westerly line of Tompkins street; the grantee covenanting, within three months after he was required so to do by the city, to construct specified bulkheads or wharves or streets, including—

"one other good and sufficient firm bulkhead, wharf, avenue or street 70 feet in width extending from the middle line of Fourteenth street to the southerly side of land formerly belonging to Flack and Gouverneur as aforesaid, being a portion of the intended new street called Tompkins street."

The Flack and Gouverneur tract lay north of Stuyvesant street.  The grantee was given wharfage rights as well.  The Manhattan Gaslight Company, by various conveyances executed by Moses Taylor and wife in 1852 and 1853, became the owner of all the land (exclusive of Avenues C and D) between Fourteenth and Fifteenth streets, from a line parallel to and 413 feet west of Avenue C to "the easterly side of the bulkhead on the East River as now laid out and built," together with the wharfage rights; and from the phraseology of the deeds it appears that the bulkheads had been actually built along the East River between the date of two of these deeds (January 22, 1852, and June 15, 1853) beyond the line of Tompkins street as originally proposed.  The Manhattan Gaslight Company also acquired title to the block between Fifteenth and Sixteenth streets, Avenue C, and Avenue D, by deed dated December 26, 1855, and to the land between Fifteenth and Sixteenth Streets, Avenue D, and the East River, by deed bearing the same date, which contains the clause:

"Together with the bulkhead built along said East River from said center line of Fifteenth street to the center line of Sixteenth street, and also all the right, title, interest, property, and claims of the said parties of the first part in and to the water rights, water front, water privileges, wharfage, cranage, rights of wharfage and cranage, land covered with water, preemptive or other rights to land which may hereafter be gained out of the East River by reason of any grant or extension of the said city of New York, or otherwise, between the center lines of said Fifteenth street and the center line of said Sixteenth street and continued into said East River in front of the premises hereby conveyed, as laid down in the diagram herein, particular reference being thereunto had."

The diagram attached to said deed shows the exterior street, adjacent to the East River, as "Tompkins Street"; but it is far to the east of the original proposed (but never opened) Tompkins street.  Following its purchase of the block between Fourteenth and Fifteenth streets in 1852, the Manhattan Gaslight Company filled in and commenced the erection of a gas manufacturing plant upon that property, and upon the further purchase of the property between Fifteenth and Sixteenth

streets it commenced to fill in the same as well and to erect part of its plant thereon. The bulkhead along the East River then existed from the center line of Fourteenth to the north line of Seventeenth street, exactly on the line of the bulkhead which exists to-day, and it extended westerly along Seventeenth street to a point west of Avenue C, and in 1855 the Manhattan Gaslight Company was in actual possession of all the property in question including the bulkhead rights, now actually occupied and claimed to be owned by the Consolidated Gas Company. This is confirmed by the testimony of an eyewitness of its then and present condition, and the then unpaved street along the bulkhead (the only one ever actually opened) was the present Tompkins or East street, quite dissimilar in its position from the proposed Tompkins street. Furthermore the City Tax Map prepared in 1853 showed the street along the East River and the bulkhead thereon to which Fourteenth, Fifteenth, and Sixteenth streets extended, all of which were indicated as at the present sites, while dotted lines were used to locate the lines of the originally proposed Tompkins street. Since 1854 the property in question has been assessed by the city; the bulkhead at the end of the streets being assessed to the city; that between Fourteenth, Fifteenth, and Sixteenth streets to the successive owners of the property, Lowber, the Manhattan Gaslight Company, or the Consolidated Gas Company. Wharfage has been collected by the city from the bulkheads at the ends of these streets since 1853. On December 22, 1856, the board of aldermen passed an ordinance (adopted by the board of councilmen December 26th and approved by the mayor December 31st) among other things continuing East street to Thirty-Eighth street, extending the street lines to East street, discontinuing so much of Tompkins street as was then laid out and designated on the map or plan of the city north of Houston street, directing the city surveyor to prepare a map of the streets therein designated, and providing that:

"The proprietors of land adjoining or nearest and opposite to East street as hereby established be and they are hereby authorized and directed to make and complete said East street on or before the first day of January, eighteen hundred and sixty, and on or before the said day to fill and level the spaces between the property and the said East River."

The map referred to cannot now be found, but it is evident that this ordinance, passed pursuant to authority of chapter 268, Laws of 1835, discontinued and abolished the old proposed location of Tompkins street, and substituted in its place the new exterior street, East street, to whose lines the adjacent property owners were required to fill in. The common council then memorialized the Legislature (March 11, 1857) to confirm the exterior line as established by this ordinance, which was done by chapter 763 of the Laws of 1857.

It is claimed that this act did not operate to save the existing structures along the water front, even though such a desire was indicated by the report of the Senate committee thereon, and the Legislature believed it was so doing when it passed the act; but we are unable to agree with that claim. Everything points to the conclusion that by adopting the north end of the bulkhead at Seventeenth street as a starting point at the seawall, and by the other provisions therein contained, it was

the intention of the Legislature, conformable to the wish of the city and the views of the Senate committee, to preserve the existing structures from Fourteenth to Seventeenth streets, whereon the city was already collecting wharfage at the foot of each street and levying taxes on the adjacent filled-in lands to the new exterior street lines. Then by chapter 522, Laws 1860, forbidding the filling of land or the maintenance of piers or bulkheads beyond the exterior line defined by the harbor commissioners, an express exception was made that it should not apply "to piers or bulkheads built before the establishment of said exterior line." See, also, chapter 378, Laws 1875. The exterior line, as has been said, was established in 1857; the bulkhead in question was built as early as 1852.

The Consolidated Gas Company acquired title to the property in question by deed dated November 10, 1884. The testimony shows conclusively that the property in question has been in the actual, exclusive, open, and uninterrupted adverse possession of the Consolidated Gas Company and of its predecessor, the Manhattan Gaslight Company, for more than 50 years, under claim of title by virtue of written instruments, and said companies have enjoyed the undisputed and sole use thereof in the conduct of their business. It has been established that, at least by 1854, there was a bulkhead on the East River from Fourteenth to Seventeenth street, adjoining this property, which has ever since remained unchanged as to position and line; that a street on the present line of Tompkins or East street ran along the same; that the blocks between Fifteenth and Sixteenth streets, from Avenue C to the bulkhead, were gradually filled in, and by 1861 fences entirely surrounded the property, save where the company's buildings extended to the street line. When Avenue D was opened, the company's property on both sides of it between Fifteenth and Sixteenth streets was also fenced in. In 1853 the City Tax Map showed the property assessed to the present line of the bulkhead. The land map of the city prepared in 1889 shows the new exterior street, the present bulkhead, and the city's ownership of the bulkheads at the ends of the streets. The property in question has been continuously assessed against the Consolidated Gas Company. The city has collected revenue from the bulkheads at the ends of the streets since 1855. It has leased the same bulkheads since 1875. It has sued for rent thereunder. It has exercised hundreds of acts of control and management over the bulkheads from Fourteenth to Seventeenth street. It has constructed buildings of the Willard Parker Hospital and the street cleaning department on and across the line of the original proposed Tompkins street.

All these things, with many others not necessary to enumerate, but appearing from the record, demonstrate that the city's claim to ownership of the property on the ground of its title to the bed of the proposed Tompkins street (which it is claimed was the permanent exterior bulkhead line), and of all land thereafter filled in to the east thereof, which it is claimed was in law to be regarded to be land under water, is untenable, as is the further claim that the grant made by the state to the city on September 28, 1871 (under authority of chapter 137, Laws of 1870), of the land covered by water lying within and westerly of a

certain exterior line, when in part the premises in question had been filled in, bulkheaded, improved, and occupied, with full recognition of private ownership thereof for nearly 20 years prior thereto, and with no. action thereafter by the city in derogation of the title then claimed by the owners in possession. But they do demonstrate that the Consolidated Gas Company is the owner of the property in controversy by adverse possession.

The order appealed from is therefore affirmed, with costs. All concur.